```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF INDIANA
                  INDIANAPOLIS DIVISION
```

| | |
|---|---|
| JOSEPH B. HARRISON, JR.,           )<br>        Plaintiff,                         )<br>                                              )<br>    vs.                                    )<br>                                              )<br>MICHAEL J. ASTRUE, Commissioner )<br>of the Social Security Administration, )<br>        Defendant.                      ) | 1:08-cv-01736-LJM-DML |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Joseph B. Harrison, Jr. ("Harrison"), requests judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of the Social Security Administration (the "Commissioner"), who found that Harrison was not entitled to a period of disability, Disability Insurance Benefits ("DIB"), or Supplemental Security Income ("SSI"). The Court rules as follows.

## I. BACKGROUND

Harrison was born on March 23, 1963. R. at 79. He joined the Army when he was seventeen years of age, and was discharged three years later. R. at 335. Harrison did not graduate from high school, but earned his GED sometime in 1997 or 1998. R. at 340, 351. He was able to secure gainful employment in a range of low-skill manual jobs from the time of his discharge from the Army in 1983 until 2001. R. at 450. The last substantial gainful employment held by Harrison was a job as a material handler, doing work at the heavy and unskilled level. R. at 537. On July 27, 2004, Harrison filed applications for DIB and SSI,

alleging a disability onset date of August 24, 2001.[1]  R. at 79.  The applications alleged that Harrison suffers from squamous cell carcinoma of the rectum, back problems, skin cancer, and heart problems, which cause shortness of breath, back pain, and a resulting inability to lift heavy objects.  R. at 136-37.  Harrison was denied benefits initially and again after reconsideration.  R. at 43, 49.  Upon Harrison's timely request, Administrative Law Judge Albert J. Velasquez (the "ALJ") conducted a hearing on October 18, 2007.  R. at 26. Harrison appeared with his attorney.  R. at 493.  Harrison, his wife, and vocational expert Ray Burger ("Burger") testified.  R. at 492.  On March 7, 2008, the ALJ issued a decision denying Harrison benefits on the ground that there were a significant number of jobs in the national economy that Harrison could perform despite his impairments.  R. at 22-23.  The Appeals Council denied Harrison's request for review.  R. at 6.

Harrison was forty-four years old at the time of the hearing before the ALJ.  R. at 79. He has suffered from a range of mental and physical impairments over a period of many years.  In November 2000, Harrison began experiencing lower back pain after lifting objects at work.  R. at 359.  In June 2002, Harrison was assaulted and suffered a fracture of the L1 vertebrae.  R. at 282-84.  In 2004, when Harrison was examined by state agency physician Dr. Daniela Djodjeva ("Dr. Djodjeva"), he estimated that he had experienced lower back pain for five years.  R. at 328.  Dr. John Woodall ("Dr. Woodall") diagnosed Harrison with degenerative disc disease in 2005 and referred him to specialist Dr. E.D. Carrel ("Dr. Carrel").  R. at 423.  X-rays of Harrison's lumbar spine taken in March 2005 revealed degenerative changes characterized by osteophyte formation and degenerative

---

[1] A prior decision from applications for DIB and SSI filed on September 14, 2001, was not reopened by the ALJ.  R. at 13.

disc narrowing from L2 to L5, most pronounced at L2-3 and L4-5. R. at 429. The X-rays also showed facet joint arthritis concentrated mostly on the right side from L3 to S1. *Id.* Dr. Carrel reviewed the X-rays and, after consultation with and evaluation of Harrison, determined that the degenerative disc disease and arthritis could be managed with exercise, namely lifting light weights and maintaining flexibility. R. at 188, 442. Dr. Carrel did not prescribe medication due to Harrison's hypertension and prior response to Voltaren, a pain medication used to treat arthritis. *Id.* Dr. Carrel did note, however, that the X-rays were "reminiscent of a 60 or 70-year-old man, probably related to [Harrison's] heavy labor at the foundry over a period of many years." R. at 442.

In addition to his back problems, Harrison suffers from condylomata acuminata.[2] R. at 381-82. In August 2001, the condylomata acuminata presented as painful perianal swellings and episodic rectal bleeding. *Id.* Dr. Rama M. Jager ("Dr. Jager") performed photocoagulation of internal hemorrhoids to address the rectal bleeding. R. at 384. Shortly thereafter, Harrison was diagnosed with squamous cell carcinoma of the rectum, but relevant records are unavailable because they were submitted along with Harrison's prior applications for SSI and DIB, which were not reopened for this case. R. at 13. Harrison underwent thirty-eight radiation treatments to treat the carcinoma. R. at 275. Harrison has repeatedly suffered rectal bleeding since the radiation therapy was completed. R. at 275, 396.

On July 13, 2004, Harrison suffered a heart attack, was diagnosed with coronary artery disease, and received a drug-coated stent. R. at 370. Thereafter, Harrison

---

[2]Condylomata acuminata is caused by human papilloma virus. *See* STEDMAN'S MEDICAL DICTIONARY 428 (28th Ed. 2006) ("STEDMAN'S").

continued to experience chest pain and dyspnea that occurred both randomly and upon exertion, and was diagnosed with unstable angina despite having only one vascular lesion that was treated with the stent. R. at 199. The diagnosing doctor, Dr. Fred Spottsville, Jr. ("Dr. Spottsville"), noted that Harrison's dyspnea may be the result of anxiety and stress with esophageal spasm. *Id.* Cardiovascular assessments performed after Harrison's heart attack showed borderline cardiomegaly. R. at 393. Harrison also suffers from uncontrolled hypertension. R. at 195, 198, 205. On September 29, 2004, Dr. Christopher Richards ("Dr. Richards") advised that Harrison is unable to engage in work related physical activities as a result of his heart failure and coronary artery disease. R. at 385.

Harrison underwent two stress tests after his heart attack, both of which were stopped due to shortness of breath. R. at 202, 227. The first test, performed on December 17, 2004, noted an abnormal resting ECG but a normal response to exercise. R. at 202. The second test, performed on December 28, 2004, also noted an abnormal baseline ECG, but was ultimately nondiagnostic because it was stopped before Harrison achieved the maximal heart rate. R. at 227. The evaluating physician, Dr. Michael V. Bournique ("Dr. Bournique"), noted that the second test revealed "poor exercise capacity." *Id.*

In addition to Harrison's ongoing heart problems, degenerative disc disease, and episodic rectal bleeding, the record references cluster headaches and possible obstructive sleep apnea. R. at 329, 511, 544. Harrison also has a history of gunshot wounds, one of which led to a colostomy in 1990. R. at 197, 338.

Harrison began consuming alcohol and using marijuana and crack cocaine at a young age. R. at 335. Additionally, he smokes about a pack of cigarettes per day. R. at 329. Over the years, Harrison's alcohol and substance abuse issues led to depression and

multiple suicide attempts. R. at 165, 186. On several occasions, Harrison admitted himself to various rehabilitation facilities for alcohol and substance abuse in an attempt to combat his dependencies. R. at 205, 334, 335, 350. At the time of the hearing on his applications for DIB and SSI, Harrison had not consumed alcohol since approximately August 2005. R. at 519. Harrison also testified that he stopped using crack cocaine approximately three years prior to the date of the hearing, around August 2004. R. at 518-19.

At the hearing, Harrison testified that his rectal cancer had been in remission for five years. R. at 497. When the ALJ asked Harrison how his medical conditions affect his ability to work, Harrison stated, "I get short winded and my back swells up[,] and I'm down for a few days after I do anything that[ i]s strenuous at all." R. at 437. Both Harrison and his wife testified about Harrison's difficulty in completing such daily tasks as washing the dishes, mowing the lawn, and shopping for groceries. R. at 498, 532, 534. Harrison stated that he can sit for about forty minutes before pain in his back and the back of his legs forces him to stand up. R. at 499. Once standing, Harrison testified that it takes about five to ten minutes for the pain to subside enough for him to resume a sitting position. R. at 500. However, he opined that if he stands longer than fifteen to twenty minutes, his back hurts from standing and he must sit again. *Id.* Harrison testified that he could walk between fifty and sixty feet before he became short of breath and experienced back and leg pain. R. at 502. He stated that his ailments do not impair the function of his hands or shoulders. R. at 503. Harrison estimated that he could lift, at most, about fifteen pounds, and said that he could not lift any amount of weight repeatedly. R. at 505-06.

Burger, the vocational expert, testified that Harrison's prior work history included jobs in shipping and receiving, sheet metal cutting, and grinding. R. at 537. Burger

characterized Harrison's prior work history as ranging from unskilled to semiskilled medium to heavy work. *Id.* The ALJ asked Burger to consider a hypothetical individual of Harrison's age, educational background, and work experience, who could lift and carry up to twenty pounds occasionally and ten pounds frequently. R. at 537. The individual could stand and walk for about six of eight hours and sit for about six of eight hours, but he needed an option to alternate between sitting and standing for one or two minutes each hour. R. at 537-38. He could only occasionally balance, stoop, kneel, crouch, crawl, or climb stairs or ramps, and could never climb ropes, ladders, or scaffolds. R. at 538. He needed to avoid working at unprotected heights or around dangerous moving machinery, and being around open flames or large bodies of water. *Id.* Further, the hypothetical individual could not operate a motor vehicle. *Id.* He could only perform work that was simple and repetitive, and that required no more than superficial interaction with the general public, co-workers, and supervisors. *Id.* Burger testified that a hypothetical individual with Harrison's vocational profile and the limitations described by the ALJ could perform light, unskilled work as an assembler, inspector, or hand packer. *Id.* The vocational expert further testified that there are 10,208; 4,419; and 5,255 such jobs in Indiana, respectively. *Id.* If limited to sedentary work, lifting and carrying no more than ten pounds occasionally and five pounds frequently, the vocational expert testified that an individual with Harrison's vocational profile could be employed as a sedentary assembler, inspector, or hand packer. R. at 538-39. Burger revealed that there are 4,237; 539; and 2,035 such jobs in Indiana, respectively. R. at 539.

6

## II.  DISABILITY AND STANDARD OF REVIEW

To be eligible for SSI and DIB, a claimant must have a disability as that term is defined in the Social Security Act.  Specifically, a disability is "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  In order to constitute a disability, the medical or physical impairment(s) must be of such severity that the individual is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).  The alleged physical or mental impairments must be supported by medically determinable evidence.  20 C.F.R. §§ 404.1508; 416.908.  Further, an individual is not disabled if "alcoholism or drug addition would . . . be a contributing factor material to the [ ] determination that the individual is disabled."  42 U.S.C. §§ 423(d)(2)(c); 1382c(a)(3)(J).

In determining whether a claimant is disabled, the ALJ applies a five-step sequential evaluation process set forth by the Social Security Administration.  20 C.F.R. §§ 416.920(a)(4); 404.1520(a)(4).  Specifically, the ALJ must consider and determine whether:

1. The claimant is employed in substantial gainful activity;

2. The claimant has a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement set forth in the regulations;

> 3. The claimant has an impairment that satisfies the duration requirement and meets or equals any of those impairments listed in the regulations that automatically require a finding of disability;
>
> 4. The claimant can still perform past relevant work given his residual functional capacity; and
>
> 5. The claimant is unable to perform other work given his residual functional capacity, age, education, and experience.

*Id.* The burden of proof is on the claimant for the first four steps of the sequential evaluation process, and shifts to the Commissioner at the fifth and final step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992) (citing *Ray v. Bowen*, 843 F.2d 998 (7th Cir. 1988)).

The Social Security Act provides for judicial review of the Commissioner's denial of benefits. 42 U.S.C. §§ 405(g); 1383(c)(3). When the Appeals Council denies a claimant's timely request for review, the ALJ's decision becomes the final decision of the Commissioner. 20 C.F.R. § 404.981; *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A reviewing court may not substitute its judgment for that of the ALJ, nor may it decide facts anew or reweigh evidence. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999) (citing *Diaz*, 55 F.3d at 305). As long as the ALJ's findings are supported by substantial evidence, they will not be disturbed by a reviewing court's

identification of alternate findings that are also supported by substantial evidence in the record. *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992).

### III. DISCUSSION
### A. THE ALJ'S FINDINGS

The ALJ began the five-step sequential evaluation process by finding that Harrison had not engaged in substantial gainful activity since his alleged disability onset date of August 24, 2001. R. at 15. Although Harrison worked at Walmart as a receiver after his alleged onset date, the employment was of short duration (less than four months). R. at 112, 507. Accordingly, the ALJ found that Harrison's employment at Walmart did not constitute substantial gainful activity. R. at 15. At the second step, the ALJ determined that Harrison had severe impairments consisting of "coronary artery disease with a history of myocardial infarction, essential hypertension, degenerative disc disease of the lumbar spine, a depressive disorder and a substance addiction disorder." *Id.* The ALJ explicitly found that Harrison's history of squamous cell carcinoma, alleged obstructive sleep apnea, and history of gunshot wounds are not severe impairments because they only minimally affect, if at all, his ability to perform work-related activities. R. at 16.

At the third step, the ALJ found that Harrison's impairments, singularly or combined, do not meet or exceed any of the impairments listed in the appendix to 20 C.F.R. § 404. R. at 16. Prior to proceeding to the fourth step, the ALJ determined Harrison's residual functional capacity ("RFC"). Based on the evidence in the record, including objective medical evidence and opinion evidence as to Harrison's symptoms, the ALJ found that Harrison can:

> [L]ift and carry twenty pounds occasionally and ten pounds frequently. He can stand and walk six hours of an eight hour workday and sit six hours provided the work accommodates an option to alternate into a sitting or standing position for 1-2 minutes each hour. He can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs. He can never climb ladders, ropes or scaffolds. The claimant should avoid work at unprotected heights, around dangerous moving machinery, around large bodies of water and around open flames. He should not perform work that requires him to operate a motor vehicle. The claimant is able to perform tasks that are simple and repetitive in nature and do not require more than superficial interaction with the general public, co-workers or supervisors.

R. at 18-19. At the fourth step, the ALJ concluded that Harrison is unable to perform any past relevant work, which required him to sometimes lift and carry objects as heavy as fifty pounds. R. at 21. Finally, at the fifth step, the ALJ concluded there are a substantial number of jobs in the national economy that Harrison could perform given his residual functional capacity. R. at 22-23.

### B.  HARRISON'S ARGUMENTS ON APPEAL

Harrison alleges that the ALJ's findings were not based on a review of the record as a whole, but instead were based only on the evidence that supported his purportedly preconceived conclusion that Harrison is not disabled. Harrison also argues that the ALJ failed to take into consideration the full range of his symptoms when determining his RFC. Finally, Harrison contends that the ALJ insufficiently supported his determination that non-medical evidence of Harrison's pain and symptoms was not fully credible. The Court considers Harrison's arguments in turn.

### 1. **The ALJ's Review of the Record**

Harrison's first argument on appeal is that the ALJ sifted the available evidence, only considering the evidence that supported his "preconceived notions" that Harrison is not entitled to benefits. With regard to step two of the sequential evaluation process, Harrison contends that the ALJ failed to mention his hypertension-induced headaches or prior history of rectal cancer and the associated treatment and residual pain and bleeding. Although the ALJ did not find Harrison's headaches or history of squamous cell carcinoma to be severe impairments, this error was harmless.[3] "Step 2 is simply an initial screening device to eliminate consideration of individuals who have only slight impairments." *Brown v. Astrue*, Cause No. 3:07-cv-99, 2009 WL 722299 at *10 (S.D. Ind. Mar. 18, 2009) (citing *Taylor v. Schweiker*, 739 F.2d 1240, 1243 n.2 (7th Cir. 1984)). "While an ALJ's failure to label a particular impairment as 'severe' is technically an error of law, such an error is not reversible as long as the ALJ finds other severe impairments and continues with the five-step evaluation process." *Id.* (citing *Perez v. Barnhart*, Cause No. 02-C-6876, 2003 WL 22287386 at *9 (N.D. Ill. Sept. 30, 2003)). The ALJ concluded that Harrison suffered from severe impairments of coronary artery disease with a history of myocardial infarction, essential hypertension, degenerative disc disease of the lumbar spine, a depressive disorder and a substance abuse disorder, and continued onto step 3 of the evaluation process. Therefore, his failure to characterize Harrison's prior history of cancer or his headaches and pain as "severe" impairments is not grounds for reversal. *Id.*

---

[3]This Court makes no finding with regard to whether the additional symptoms and impairments listed by Harrison are in fact severe impairments.

With regard to step three, Harrison concedes that his impairments, when considered singly, do not meet or exceed any of the listings that require a finding of disability. Harrison apparently contends that the combination of his impairments, when taken as a whole, do meet the listing requirements. However, Harrison fails to specify which of the listings he believes that he satisfies, and goes no further than stating the bare allegation. Harrison's failure to develop this point effectively waives review of the alleged error on appeal. *U.S. v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point.") (emphasis omitted).

## 2. The ALJ's RFC Determination

Harrison next alleges that the ALJ failed to address the evidence pertaining to his headaches, hypertension, cardiac condition, back condition, history of rectal cancer, and pain in determining Harrison's RFC. Harrison argues that the ALJ did not fully consider the fact that his mental impairments cause moderate difficulties with maintaining concentration, persistence, and pace. Harrison notes that the ALJ failed to consider the testimony of his wife and the letters from his family and friends that detailed the difficulties he has with daily functioning. Harrison further contends that the hypothetical posed by the ALJ to the vocational expert inadequately accommodated all of Harrison's functional limitations.

The ALJ is required to consider those impairments that are not "severe" in determining a claimant's RFC. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). "The ALJ is obliged to examine and weigh all the evidence including observations by treating and

examining physicians, third-party testimony, the claimant's testimony and daily activities, functional restrictions, pain medication taken, and aggravating or precipitating factors." *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994) (citing 20 C.F.R. § 404.1529). Pertinent non-medical evidence includes "descriptions and observations of [ ] limitations . . . provided by . . . family, neighbors, friends, or other persons." 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). Further, it is undisputed that "meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence." *Herron*, 19 F.3d at 333. However, the ALJ is not required to explicitly discuss all evidence in the record. *Id.*

Contrary to Harrison's allegations, the ALJ explicitly considered and accommodated Harrison's headaches, hypertension, depression, and back problems in his RFC determination. R. at 21. In order to accommodate Harrison's depression and headaches, the ALJ's RFC restricted him to repetitive, simple tasks and jobs that required minimal interaction with the public, co-workers, and managers. *Id.* The RFC included a restriction to light or sedentary work to accommodate Harrison's back pain, and further required that Harrison have an option to alternate between sitting and standing for a few minutes every hour. *Id.* The ALJ limited Harrison's exposure to hazards and restricted him from operating a motor vehicle in order to accommodate his headaches, hypertension, and depression. *Id.* In short, Harrison's contention that the ALJ rejected entire lines of evidence is without merit.

Further, the only requirement for hypothetical questions posed to a qualified vocational expert is that they "fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron*, 19 F.3d at 337 (citing

*Cass v. Shalala*, 8 F.3d 552, 556 (7th Cir. 1993)).  The medical evidence before the ALJ included:  (1) a physician recommendation that Harrison be restricted from doing heavy lifting due to his degenerative disc disease and arthritis; (2) a conclusion based on a psychiatric evaluation that Harrison could perform simple, repetitive tasks despite his depression and substance abuse disorder; and (3) a physician note stating that Harrison is unable to work due to his heart condition, but not elaborating or offering any specific limitations.  The ALJ specifically adopted the restriction against heavy lifting and the requirement that Harrison only perform simple and repetitive work.  R. at 21.  As for the physician's determination that Harrison's heart condition rendered him unable to work, "[a] statement by a medical source that [a claimant] is disabled or unable to work does not mean that [the ALJ] will determine that [the claimant] is disabled." 20 C.F.R. § 404.1527(e).  Ultimately, the Court concludes that the ALJ's RFC determination is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz*, 55 F.3d at 305.

### 3.  The ALJ's Credibility Determination

Finally, Harrison argues that the ALJ improperly assessed the credibility of subjective testimony regarding Harrison's symptoms of persistent back pain.  Harrison contends that the ALJ's perfunctory dismissal of direct and documentary testimony from Harrison, his wife, and third parties regarding his back and the limitations it places on his daily activities was in error.  It is well settled that "[a]n ALJ's credibility determination will not be disturbed unless it is patently wrong."  *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (citing *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1995)).  The ALJ is required to "give

substantial weight to the medical evidence and opinions submitted, unless specific legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Thus, "[i]f the administrative law judge believed the medical reports . . . and disbelieved [claimaint's] own testimony, this would compel the denial of the application for benefits." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

However, an ALJ's credibility finding must have "some support in the record." *Herron*, 19 F.3d at 335. The Social Security Rulings require that the ALJ consider the case record in its entirety when assessing the credibility of a claimant's statements, including "the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual." S.S.R. 96-7p. Further, "a lack of medical evidence alone is an insufficient reason to discredit testimony." *Villano v. Astrue*, 556 F.3d 558, 562 (2009). *See also* 20 C.F.R. § 404.1529(c)(2); S.S.R. 96-7p.

The ALJ explicitly noted his consideration of both objective medical evidence and opinion evidence in evaluating the effect that Harrison's symptoms, including his reported back pain, heart disease, and headaches, have on his ability to work. R. at 19-20. He discussed Harrison's testimony regarding limitations in walking, standing, and sitting as a result of his back pain, but discounted this testimony in light of medical evidence indicating no such limitations. The ALJ noted that a March 2005 examination revealed "no motor or sensory loss and [a negative] straight leg raise." R. at 19. He referenced a November 2004 examination that revealed Harrison had full range of motion in his lower back, although he experienced some pain when the area was touched. *Id.* Harrison successfully

performed a variety of ambulatory functions during the examination, including rocking back on his heels, squatting, and walking on his toes. R. at 19, 330. The examining physician noted that Harrison could easily get onto and off of the examining table, and ambulated effectively with no abnormal posture. *Id.* Further, the ALJ noted that Harrison had been prescribed a muscle relaxer and a nonsteroidal anti-inflammatory for occasional back pain, but that a 2006 physician exam revealed "no muscle weakness, numbness or tingling." R. at 20. Based on this medical evidence, the ALJ concluded that "the record does not support the significant functional limitations testified to by the claimant as a result of his back pain." R. at 20.

"Since the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong." *Herron*, 19 F.3d at 335 (citing *Wolfe v. Shalala*, 997 F.2d 321, 326 (7th Cir. 1993)). Although Harrison points out that the ALJ did not mention the opinion evidence offered in the form of testimony from his wife and letters from his mother, sister, and a friend that discuss his back pain, the ALJ is not required to explicitly discuss all evidence in the record. *Id.* at 333. Further, "[A] claim of pain may be discounted if it is not borne out by objective medical evidence." *Walker v. Bowen*, 834 F.2d 635, 641 (7th Cir. 1987). The ALJ's finding that Harrison's allegations of pain are not fully credible is supported by substantial evidence in the record.

## IV.  CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of Social Security in this case is **AFFIRMED**.  Final judgment shall be entered accordingly.

IT IS SO ORDERED this 10th day of March, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Irma Hampton Nave
ATTORNEY AT LAW
irmahamptonstewart@yahoo.com